UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE MARSHA MCFARLIN, | § § § § § | CASE NO. 06-32327<br>CHAPTER 13 |

**MEMORANDUM OPINION ON DEBTOR'S OBJECTION
TO CLAIM OF AMERICA'S SERVICING COMPANY**
[Docket No. 62]

### I. INTRODUCTION

On July 20, 2004, Marsha McFarlin (the Debtor) executed a Deed of Trust/First Mortgage (the Agreement) with MILA Inc. [Debtor's Exhibit 1, pp. 3-7.] The Agreement provided that MILA waived escrow on the loan [Debtor's Exhibit 1, p.1], but allowed MILA to revoke the waiver at any time after notice had been given to the Debtor. [Debtor's Exhibit 1, p. 5] In addition, the Agreement provided MILA with the right to make escrow item payments on behalf of the Debtor, and to demand repayment of such amounts, if the Debtor did not satisfy her obligation to pay these amounts directly. [Debtor's Exhibit 1, p. 5.] The loan was later assigned to America's Servicing Company (ASC) [Debtor's Exhibit 1, p. 8], and the Debtor subsequently failed to make the escrow item payments. ASC later made the escrow item payments on the Debtor's behalf and established an escrow account to satisfy the advance payment and provide for future tax bills. [Creditor's Exhibit 21, p. 4.] The Debtor argues that she should not be held liable for the amounts paid by ASC due to the waiver of escrow on the loan and the absence of any revocation of such waiver.

This Court finds that the plain meaning of the Agreement expressly gives ASC the right to revoke the waiver and to pay, and demand repayment of, the amounts paid to escrow items of the delinquent Debtor. However, this Court holds that the required, prior notice set forth in the

Agreement must be strictly adhered to, and because ASC failed to fulfill all requirements for effective notice, the Debtor will not be held liable for escrow item payments paid on her behalf for the year 2004. The Debtor will, however, be held liable for escrow item payments made on her behalf for the years 2005 and 2006.[1]

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052, and Bankruptcy Rule 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

The following are the facts, either as stipulated to or admitted by counsel of record or as admitted in the briefs and filings, or as adduced from testimony, set forth in chronological order.

1. On July 20, 2004, the Debtor signed the Agreement with MILA. [Debtor's Exhibit 1, pp. 3-7.]

2. On July 20, 2004, the Debtor received a First Payment Letter from MILA, noting that escrows had been waived on this loan. [Debtor's Exhibit 1, p. 1.]

3. On July 20, 2004, the Debtor received an Insurance & Property Tax Statement/Non Impound Notice from MILA stating that the mortgage would not be impounded for real estate taxes and homeowner's insurance because the Debtor would be responsible for these payments

---

[1] The year 2006 payments are limited to those payments made by ASC on or before June 3, 2006, i.e. the date of the filing of the Debtor's bankruptcy petition.

when they became due and payable. [Debtor's Exhibit 1, p. 2.]

4. On August 17, 2004, the Debtor received notice of the assignment of the Agreement to ASC. [Debtor's Exhibit 1, p. 8.]

5. On May 31, 2005, ASC sent the Debtor a letter stating that her real estate taxes were past due and asking the Debtor to pay such amounts and provide proof of payment to ASC. [Creditor's Exhibit No. 21, p. 1.]

6. On July 1, 2005, ASC sent a letter to the Debtor stating that real estate taxes were still delinquent and imposing a deadline of July 21, 2005, in which proof of payment must be received by ASC. [Creditor's Exhibit No. 21, p. 2.] The letter went on to state that if payment was not made, ASC would then pay the delinquent taxes and establish an escrow account for the collection of the advance payment and future tax bills for the life of the loan. [Creditor's Exhibit No. 21, p. 2.][2]

7. On July 20, 2005, ASC sent a notice to the Debtor explaining that ASC had paid for the Debtor's delinquent real estate taxes and had established an escrow account on Debtor's behalf for the amount paid to bring her taxes current and for future tax bills. The copy of the notice provided to this Court did not display a company name or contact information in the body of the letter and was not printed on ASC's company letterhead.[Creditor's Exhibit No.

---

[2] The letters sent by ASC to provide notice of the intent to revoke the previous waiver and the letter stating that such an option had been exercised never explicitly stated ASC's authority to take such actions under the terms of the Agreement. The language should have been something such as, "Under Section 3 of the Deed of Trust, we hereby revoke the waiver of escrow items . . .," in order to provide the Debtor with explicit authority and a point of reference to investigate such authority in an effort to avoid confusion in the future. As the drafter of the documents and the more sophisticated party, ASC should strictly follow the wording of its agreements and clearly put debtors on notice of any actions that ASC is pursuing under the terms of such agreements.

3

21, p. 4.]³

8. On June 3, 2006, the Debtor filed a voluntary petition under Chapter 13. [Docket No. 1.] As of this date, the Debtor had failed to pay the 2005 taxes on the property described in the Deed of Trust. [Docket No. 89, p. 27, ln. 10-12.]

9. On June 15, 2006, ASC filed a Proof of Claim for the outstanding balance of the loan, plus the escrow item payments made on the Debtor's behalf. [Proof of Claim, 2-1.]

10. On August 18, 2006, the Debtor filed an Objection to ASC's claim stating, among other things, that the amount of claimed arrearage owed was overstated and a breakdown of the escrowed amounts had not been provided. [Docket No. 31.]

11. On September 7, 2006, ASC filed a Response in opposition to the Debtor's Objection to Claim admitting to allegations in paragraphs 1-3 in the Debtor's Objection and denying allegations in paragraph 4 of the Debtor's Objection. [Docket No. 41.]

12. On November 10, 2006, the Debtor filed a second Objection to ASC's Claim stating, among other things, that ASC wrongfully attempted to collect taxes and insurance through an escrow

---

³ In addition to the poorly drafted notices sent by ASC, this Court is concerned with the authenticity of the letters which were sent to the Debtor that did not contain ASC's company letterhead or provide ASC's name in the body of the letter. [Creditor's Exhibit 23.] Documents will be excluded for lack of authentication when a letterhead is missing with no testimony as to its authenticity, and the court is not afforded the opportunity to compare that document with others in which a letterhead is contained. *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F.Supp. 2d 462, 473 (S.D.N.Y. 2000). Testimony alone is not proof that a document has been received, especially when there is no letterhead, seal, or signature. *Troy Ford Inc. v. Krug Auto Sales, Inc.*, Not Reported in N.E.2d (Ohio App. 2 Dist. 1991).

In the present matter, ASC had previously sent correspondence to the Debtor using a bold, conspicuous letterhead clearly indicating that the document was from ASC. [Creditor's Exhibit 19, p. 6.] Yet, the documents sent to the Debtor to provide notice of her delinquent tax payments, and to eventually inform her of the payment ASC made on her behalf, contained no such letterhead and used the terms <CLTNME> and <CLTPNE> throughout the body of the letter instead of the company's contact information. [Creditor's Exhibit 21.] Although ASC did introduce credible testimony from a representative of the company that such documents were sent to the Debtor from ASC [Docket No. 89, pp. 72: 6-25, 73: 1-25, 74: 1-7, 75: 6- 10], there is no additional evidence that this was the case. This Court finds the missing letterhead information and the missing company name in the entire body of the letters to be disconcerting and would admonish ASC's counsel to ensure its client is clearly identified on its own documents in order to avoid this confusion in the future.

account that had previously been waived. [Docket No. 62.][4]

13. On November 24, 2006, ASC filed a second Response in opposition to the Debtor's Objection to Claim admitting to allegations in paragraphs 1-3, denying allegations in paragraphs 4a, 4b, 4c, and 4d, and citing insufficient information for allegation in paragraph 4e. [Docket No. 73.]

14. On January 25, 2007, ASC filed an Amended Proof Claim for the outstanding balance of the loan, plus the escrow item payments made on the Debtor's behalf. [Proof of Claim, 2-2.][5]

15. On February 5, 2007, the Court held a hearing on the Debtor's Objection to ASC's Claim, in which evidence and testimony for both parties was entered into the record. The Court scheduled a subsequent hearing for March 5, 2007 to allow counsel for both parties to file briefs on the issue.

16. On February 28, 2007, ASC filed a brief regarding the construction of the Mortgage Note and Deed of Trust contracts. [Docket No. 88.]

17. On February 28, 2007, the Debtor filed a brief on the construction of the Mortgage Note and Deed of Trust contracts. [Docket No. 90.]

### III. CONCLUSIONS OF LAW

A.   **Jurisdiction and Venue**

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §

---

[4] This Court had not yet ruled on the Debtor's first Objection to ASC's Claim or the subsequent Response to the Objection prior to the filing of the second Objection. As such, this Court will treat the Debtor's second Objection and ASC's second Response to the Objection as the Amended Objection and the Amended Response to the Objection, respectively.

[5] The difference between the first and second Proof of Claim filed by ASC is the total claimed amount. The amount increased from $12,560.55 in the September 2006 original Claim to $12,735.27 in the January 2007 Amended Claim.

1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). Venue is proper pursuant to 28 U.S.C. § 1408.

**B.  Texas rules regarding contract construction and interpretation**

When applying Texas law, "[t]he primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Gonzalez v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004); *ASI Tech. Inc. v. Johnson Equip. Co.,* 75 S.W.3d 545, 548 (Tex. App.-San Antonio 2002); *Sifuentes v. Carrillo,* 982 S.W.2d 500, 503 (Tex. App.-San Antonio 1998, pet. denied). If the contract terms are susceptible to only one reasonable construction, the contract is unambiguous and will be enforced as written. *Leasehold Expense Recovery, Inc. v. Mother's Work, Inc.,* 331 F.3d 452, 456 (5th Cir. 2003); *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.,* 111 S.W.3d 669 (Tex. App.-Austin 2003). "A contract generally is construed against its drafter only as a last resort under Texas law- i.e., after the application of ordinary rules of construction leave a reasonable doubt as to its interpretation." *Forest Oil Corp. v. Stratea Energy,* 929 F.2d 1039, 1043-44 (5th Cir. 1991); *Evergreen,* 111 S.W.3d at 666-67. Therefore, in determining the intent and enforceability of a contract, this Court must look first to the specific wording of the contract before any further construction analysis should be applied.

    1.    **The terms of the Agreement allow ASC to revoke the waiver and pay and demand repayment of the escrow item amounts made on behalf of the delinquent Debtor.**

In the matter at bar, the Debtor entered into the Agreement with MILA, which was later assigned to ASC, in which MILA agreed to waive escrows for the loan. [Debtor's Exhibit 1, p. 1.] Accordingly, the Debtor agreed to directly pay the escrow item amounts when and where payable. [Debtor's Exhibit 1, p. 5.] The terms and conditions of the Agreement also provided that MILA

could, with notice, revoke the waiver of escrow at any time and reserved the right to make such payments if the Debtor failed to pay these obligations. [Debtor's Exhibit 1, p. 5.] In that event, the Debtor would be bound to repay MILA any such amounts. [Debtor's Exhibit 1, p. 5.]

Here, the Debtor contends that she is not liable for the escrow item payments made on her behalf because MILA waived the right to require escrow of those items when the Agreement was executed. In her argument, the Debtor fails to reconcile her position with the terms in the Agreement that specifically reserve to MILA, and subsequently ASC, the right to revoke the waiver and pay and demand repayment of those amounts when she fails to fulfill her obligation. The terms found in Section 3 of the Agreement are plain in meaning and have only one reasonable interpretation; this Court does not find the terms to be ambiguous. For this reason, the terms should be enforced as written. *Leasehold Expense Recovery, Inc.*, 331 F.3d at 456. This Court finds that the language in the Agreement expressly provides MILA, and therefore ASC, with the right to pay and demand repayment of any amounts used to satisfy the delinquent Debtor's escrow obligations after notice is given.

    2.    **The failure of ASC to fulfill the requirements of effective notice under Texas law and the terms of the Agreement prevent ASC from holding the Debtor liable for escrow amounts paid on her behalf for the year 2004.**

Although there is no case precisely on point concerning the facts in the case at bar, this Court can analogize from the similar fact pattern of acceleration clauses. "Where the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands notice be given of the intent to exercise the option." *Ogden v. Gibraltar*, 640 S.W.2d 232, 233 (Tex. 1982). Under Texas law, "a creditor must do three things before it can accelerate a note and demand all amounts due and owing." *Union Labor Life Ins. v. Ten Gallon Hat Assoc.*, 787

7

F.Supp. 465, 468 (E.D. Pa. 1992) (District Court for the Eastern District of Pennsylvania applying Texas law). "First, the creditor must notify the debtor that it unequivocally intends to accelerate the note; and second, the creditor must give the debtor a reasonable opportunity to cure the default." *Id.* "Third, the creditor must send a notice that the note has been accelerated, and declare the entire debt due." *Id.* Furthermore, a right of election cannot be exercised until a party is given the full amount of time allotted for opportunity to cure as set forth in a notice. *Green v. Dalal*, 121 N.Y.S.2d 249, 253 (N.Y. Mun. Ct. 1953).

In the present matter, the terms of the Agreement between ASC and the Debtor afforded ASC the ability to revoke the waiver of an escrow account at any time provided that notice was given to the Debtor. [Debtor's Exhibit No. 1, p. 5.] In fulfilling the first requirement under *Union Labor Life Ins.*, ASC did sent a letter to the Debtor on July 1, 2005, stating that past due amounts of property taxes were still unpaid and provided a deadline of July 21, 2005, by which the Debtor had to cure and submit proof of payment to ASC. [Creditor's Exhibit No. 21, p. 2.] The language in the July 1, 2005 letter is sufficient notice of ASC's intent to revoke the earlier waiver. Further, the July 1, 2005, letter provided the Debtor with a twenty-day period to cure in which the delinquent payments could be made without the establishment of an escrow account. Thus, the second requirement of the *Union Labor Life Ins.* test was satisfied.

Finally on July 20, 2005, ASC sent the Debtor a notice stating that the delinquent tax amounts had been paid by ASC on the Debtor's behalf and informing her that an escrow account had been established in order to repay ASC for those amounts and for collection of future tax bills as well. [Creditor's Exhibit No. 21, p. 4.] While the July 20, 2005, letter does satisfy the final requirement under the *Union Labor Life Ins.* test, ASC's fatal flaw was not allowing the twenty-day

cure period to expire before revoking the waiver and prematurely establishing the escrow account; ASC needed to wait until July 22, 2005 to pay the amounts on behalf of the Debtor in order to rightfully recover them from the Debtor. Consequently, because the Debtor was not afforded the entire period to cure set forth in the letter sent by ASC, the Debtor will not be liable for the payments made by ASC to satisfy her 2004 taxes. Yet, because the Debtor was effectively on notice of ASC's intent to revoke its waiver after the payment of the 2004 taxes, this Court holds that the Debtor is liable to ASC for those amounts expended to pay her 2005 and 2006 taxes.

## IV. CONCLUSION

This Court finds that when interpreting the language of a contract, plain and unambiguous language will be enforced according to the ordinary and reasonable application of those terms. Consequently, when the terms of the Agreement reserve to MILA, and therefore ASC, the right to revoke the waiver and demand repayment for escrow item amounts paid on the delinquent Debtor's behalf, the reserved right will be recognized. Further, this Court finds that when interpreting the language of the Agreement, all elements and provisions of the Agreement should be enforced on all parties to avoid rendering the terms meaningless. Therefore, when a requirement is found which obligates ASC to provide written notice to the Debtor of the revoked waiver before escrow item payments are made on the Debtor's behalf, the notice required under Texas law should be scrupulously followed. Revocation of an existing waiver before the cure period has expired will release the Debtor from any liability regarding those payments that have been made up to that date.

In sum, the good news for ASC is that the specific wording found in the Agreement will be enforced by this Court. The bad news for ASC is that the specific wording found in the Agreement will be enforced by this Court.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 15th day of March, 2007

_____
Jeff Bohm
U.S. Bankruptcy Judge